UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

JANE DOE 02

        Plaintiff

vs.

MICHIGAN STATE UNIVERSITY;
THE BOARD OF TRUSTEES OF MICHIGAN
STATE UNIVERSITY;
LAWRENCE GERARD NASSAR, D.O., and
MICHIGAN STATE UNIVERSITY SPORTS
MEDICINE CLINIC and USA GYMNASTICS, INC.

        Defendants

Case No.
Hon.

_____

LOUIS G. COREY (P34377)
Attorney for Plaintiff
401 N. Main Street
Royal Oak, Michigan  48067
(248) 548-9700

TODD F. FLOOD (P58555)
Co-Counsel for Plaintiff
401 N. Main Street
Royal Oak, Michigan  48067
(248) 547-1032

_____

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, Jane Doe 02, by and through her attorneys, THE COREY LAW FIRM and FLOOD LAW, PLLC, and for her Complaint against the defendants state as follows:

**I. PRELIMINARY STATEMENT AND INTRODUCTION**

1.      This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by plaintiff's minor as a result of the acts, conduct, and omissions of Lawrence Nassar, D.O. ("Nassar"), Michigan State University ("MSU"), and

1

USA Gymnastics ("USAG") and their respective employees, representatives, and agents relating to sexual assault, abuse, molestation, and nonconsensual sexual touching and harassment by defendant Nassar against Jane Doe 02.

2.     Plaintiff is an athlete participating in gymnastics.

3.     Defendant Nassar came highly recommended to plaintiff as a renowned orthopedic sports medicine physician, purportedly well-respected in the sports medicine community, specifically in the gymnastics community as the Team Physician for the United States Gymnastics Team.

4.     Plaintiff Jane Doe 02 had no reason to suspect Defendant Nassar was anything other than a competent and ethical physician.

5.     From approximately 1996 to 2016 Defendant Nassar worked for Michigan State University in various positions and capacities.

6.     From 1986 to approximately 2015 Defendant Nassar also worked for USA Gymnastics in various positions and capacities.

7.     For over 20 years, Defendant Nassar had unfettered access to young female athletes through the Sports Medicine Clinic at MSU and through his involvement with USAG.

8.     To gain plaintiff's trust, at appointments, Defendant Nassar would give some patients gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without.

9.     From 2009 under the guise of treatment, Defendant Nassar sexually assaulted, abused and molested Jane Doe 02, by nonconsensual vaginal and anal digital penetration and without the use of gloves or lubricant.

10.     Plaintiff was seeking treatment for athletic injuries involving her back, shoulders, heel, hip, foot, hamstring and shin.

11.     These assaults were carried out at MSU's Sports Medicine Clinic and MSU's Jenison field house.

12.     The age of plaintiff at the time of the assaults was 12-19 years of age.

13.     In 1999 an MSU student (Plaintiff Jane A 19 Doe to case No. 1:17-cv-00029) athlete reported to trainers and her coach, who were employees of MSU, concerns about Defendant Nassar's conduct and "treatment," yet MSU failed to take any action in response to her complaint.

14.     In 2000 "Jane TT Doe," another MSU student athlete, reported to trainers concerns about Defendant Nassar's conduct and "treatment," yet again MSU failed to take any action in response to her complaint.

15.     Many patients were seen alone with only the individual patient and Defendant Nassar in the room without chaperones.

16.     At other times, Defendant Nassar would position himself in a manner in which parents or chaperones in the room could not see his conduct.

17.     Because MSU took no action to investigate the 1999 or 2000 complaints and took no corrective action from 2000 to 2016, under the guise of treatment, Jane Doe 02 also sexually assaulted, abused and molested by defendant Nassar by nonconsensual vaginal and anal digital penetration and without the use of gloves or lubricant.

18.     While most victims were assaulted at MSU, other victims were assaulted at USAG-sanctioned events and Defendant Nassar's residence.

3

19.     The ages of the patients assaulted from 2000 to 2016 ranged from 9 to 29 years old.

20.     Additional complaints regarding defendant Nassar's conduct surfaced in 2014.  A victim reported she had an appointment with defendant Nassar to address hip pain and was sexually abused and molested by defendant Nassar when he cupped her buttocks and massaged her breast and vaginal areas and became sexually aroused.

21.     Upon information and belief, defendant MSU investigated the 2014 complaints through their Office of Institutional Equity, and although the victim reported to defendant MSU certain facts, some were omitted from the investigative report including but not limited to the following:

> a.     Defendant Nassar was sexually aroused while touching her;
>
> b.     The appointment with defendant Nassar did not end until she physically removed his hands from her body.

22.     Three months after initiating the investigation, in July 2014, the victim's complaints were dismissed and defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed defendant Nassar's conduct "medically appropriate" and "not of sexual nature."

23.     Defendant Nassar continued to treat patients alone.

24.     Following the investigation, between approximately 2015 and 2016 Jane Doe 02 was sexually assaulted by Defendant Nassar.

25.     Through his position with MSU, his notoriety, and support by USAG, Defendant Nassar used his position of authority as a medical professional to abuse Jane Doe 02 without any reasonable supervision by MSU or USAG.

26.     Defendant Nassar carried out these acts without fully explaining the "treatment" or obtaining consent of plaintiff.

4

27.     All of Defendant Nassar's acts were conducted under the guise of providing medical care at his office at Michigan State University.

28.     The failure to give proper notice or to obtain consent for the purported "treatment" from plaintiff robbed her of the opportunity to reject the "treatment."

29.     Defendant Nassar used his position of trust and confidence in an abusive manner causing plaintiff to suffer a variety of injuries including but not limited to shock, humiliation, emotional distress, and related physical manifestations thereof, including but not limited to embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

30.     In September 2016, a story was published regarding a complaint filed with defendant MSU's Police Department titled "Former USA Gymnastics Doctor Accused of Abuse," which included Rachael Denhollander's allegations against defendant Nassar.

31.     Following the September 2016 publication, other victims began coming forward after recognizing that they were victims of sexual abuse at a time when most of them were minors.

32.     Plaintiff has been forced to relive the trauma of the sexual assault.

33.     In summer 2015, USAG relieved Defendant Nassar of his duties after becoming aware of concerns about his actions, yet USAG failed to inform Michigan State University of the circumstances of his dismissal.

34.     As early as 1999, representatives of Michigan State University were made aware of Defendant Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, abuse, and molestation of patients through approximately 2016.

5

35. Michigan State University's deliberate indifference before, during, and after the sexual assault, abuse, and molestation of patients was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, 42 U.S.C. § 1983, as well as other Federal and State laws.

36. MSU and USAG's failure to properly supervise Defendant Nassar and their negligence in retaining defendant Nassar was in violation of Michigan state common law.

37. In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan, on three charges of first-degree criminal sexual conduct with a person under 13.

38. In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal Court in Grand Rapids, Michigan, on charges of possession of child pornography.

39. On February 22, 2017, Defendant Nassar was arraigned on 22 counts of first degree criminal sexual conduct with a person under 13 years old, and 14 counts of third degree criminal sexual conduct with a person under 13 years old in Ingham County, Michigan, and Eaton County, Michigan. Rachael Denhollander is among the victims identified in the most recent state criminal charges.

40. The acts, conduct, and omissions of Defendants Michigan State University and USA Gymnastics, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of plaintiff and an unknown number of individuals, and have resulted in repeated instances of sexual assault, abuse, and molestation of plaintiff by defendant Nassar, which has been devastating for plaintiff and her family.

41.     This action arises from defendants' blatant disregard for plaintiff's federal and state rights, and defendants' deliberately indifferent and unreasonable response to physician-on-patient sexual assault, abuse, and molestation.

## II. JURISDICTION AND VENUE

42.     This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, as more fully set forth herein.

43.     This is also an action to redress the deprivation of Plaintiff's rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

44.     Subject matter jurisdiction is founded upon 28 U.S.C. §1331 which provides the district court with jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States.

45.     Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343 which gives district courts original jurisdiction over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

46.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

7

47.     The claims are cognizable under the United States Constitution, 42 U.S.C. § 1983, 20 U.S.C. § 1681 *et seq.*, and under Michigan Law.

48.     The events giving rise to this lawsuit occurred in Ingham County, Michigan, which sits in the Southern Division of the Western District of Michigan.

49.     Venue is proper in the United States District Court for the Western District of Michigan, pursuant to  28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

50.     Because Michigan State University is a public university organized and existing under the laws of the state of Michigan, and the Michigan statutory law requires parties to file a Notice of Intent to File Claim in order to maintain any action against the State, in satisfaction of M.C.L. § 600.6431 plaintiff filed a Notice of Intent to File Claim with the Michigan Court of Claims on February 13, 2018.

### III. PARTIES AND KEY INDIVIDUALS

51.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

52.     Plaintiff's name has been withheld from this Complaint to protect her identity.

53.     Plaintiff Jane Doe 02  is a resident of the State of Michigan.

54.     Defendant Lawrence "Larry" Nassar, is a Doctor of Osteopathic Medicine, and is a resident of the State of Michigan.

55.     Defendant Michigan State University (hereinafter, "Defendant MSU") was at all times relevant and continues to be a public university organized and existing under the laws of the state of Michigan.

.    56.    Defendant MSU receives federal financial assistance and is therefore subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

57.    Defendant Michigan State University Sports Medicine Clinic (hereinafter "Defendant MSU Med") is a medical practice of Michigan State University.

58.    Defendant Board of Trustees of Michigan State University (hereinafter, "Defendant MSU Trustees") is the governing body for Michigan State University and Michigan State University Medicine.

59.    Defendants MSU, MSU Med, and MSU Trustees are hereinafter collectively referred to as the MSU Defendants.

60.    Lou Anna K. Simon is the former President of Defendant MSU, appointed in approximately January 2005 and serving in that position until announcing her resignation on January 24, 2018.  Prior to her appointment as President, Ms. Simon held several administrative roles including assistant provost for general academic administration, associate provost and provost and vice president for academic affairs during her career with MSU.

61    M. Peter McPherson is the immediate Past President of Defendant MSU, and served as President from approximately 1993-2004.

62.    William D. Strampel, D.O. is the Dean of the College of Osteopathic Medicine at Michigan State University, serving in that capacity since approximately April 2002 and as Acting Dean between December 2001 and April 2002.

63.    Jeffrey R. Kovan, D.O. is or was the Director of Division of Sports Medicine at Michigan State University.

64.    Brooke Lemmen, D.O. is or was a practicing physician with MSU Sports Medicine from approximately 2010 to 2017.

65.     Defendant United States of America Gymnastics (hereinafter "Defendant USAG") was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States, including but not limited to  Michigan.

66.     Steve Penny is the immediate past president and Chief Executive Officer of Defendant USAG (named in approximately April 2015), who was responsible for the overall management and strategic planning of Defendant USAG.

67.     Robert Colarossi is the past president of Defendant USAG and held the position from approximately 1998 to 2005, and during that time was responsible for the overall management and strategic planning of Defendant USAG.

68.     Bela Karolyi is a former Romanian gymnastics coach who defected to the United States in the early 1980's, previously served as National Team Coordinator for Defendant USAG and trained elite level USAG member gymnasts at a facility operated in the State of Texas.

69.     Martha Karolyi, the wife of Bela Karolyi who also defected to the United States in the early 1980's, assisted in the operation, management, control, and supervision of the facility operated in the State of Texas where she and her husband trained elite level USAG member gymnasts.

70.     Martha Karolyi is the immediate past National Team Coordinator for Defendant USAG.

71.     The Karolyi Ranch as referenced herein refers to the facility located in Huntsville, Texas also known at the USAG National Team Training Center and/or any of the following business entities, believed to be incorporated in the state of Texas: Karolyi Training Camps, LLC, Karolyi World Gymnastics, Inc., and/or Karolyi's Elite.

10

## IV. COMMON ALLEGATIONS

72.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

73.     At all relevant times, Defendant Nassar maintained an office at MSU in East Lansing, Michigan.

74.     At all times relevant, Defendants MSU, MSU Med, MSU Trustees and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

75.     At all relevant times, including the years 1996 to 2016, Defendant Nassar was acting in the course and scope of his employment or agency with Defendant MSU.

76.     At all relevant times, including the years 1996 to 2015, Defendant Nassar was acting in the scope of his employment or agency with Defendant USAG.

77.     Defendant Nassar graduated from Michigan State University with a Doctor of Osteopathic Medicine degree in approximately 1993.

78.     Defendant Nassar was employed by and/or an agent of Defendant USAG from approximately 1986 to 2015, serving in various positions including but not limited to:

        a.     Certified Athletic Trainer;

        b.     Osteopathic Physician:

        c.     National Medical Director;

        d.     National Team Physician, USA Gymnastics;

        e.     National Team Physician, USA Gymnastics Women's Artistic Gymnastics National Team.

11

79.     Defendant Nassar was employed by Defendant MSU from approximately 1996 to 2016 in various positions including but not limited to:

    a.    Associate Professor, Defendant MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine;

    b.    Team Physician, Defendant MSU's Men's and Women's Gymnastics Team;

    c.    Team Physician, Defendant MSU's Men's and Women's Track and Field Team;

    d.    Team Physician, Defendant MSU's Men's and Women's Crew Team;

    e.    Team Physician, Defendant MSU's Intercollegiate Athletics;

    f.    Medical Consultant, Defendant MSU's Wharton Center for the Performing Arts;

    g.    Advisor, Student Osteopathic Association of Sports Medicine.

80.     As a part of Defendant Nassar's employment and contractual duties with Defendant MSU, Defendant Nassar was responsible for spending between 50 to 70% of his time engaged in "outreach" and/or "Public Services."

81.     Defendant Nassar's outreach included providing medical treatment to athletes affiliated with Defendant USAG and other organizations.

82.     As a physician of Osteopathic Medicine, Defendant Nassar's medical care and treatment should have consisted largely of osteopathic adjustments and kinesiology treatment to patients, including students and student-athletes of Defendant MSU.

83.     Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

84.     While employed by Defendants MSU and USAG, Defendant Nassar practiced medicine at Defendant MSU's Sports Medicine Clinic, a facility at MSU.

85.    During his employment, agency, and representation of the MSU Defendants and Defendant USAG, Defendant Nassar sexually assaulted, abused and molested Plaintiff by engaging in nonconsensual sexual touching, assault, and harassment, including but not limited to digital vaginal and anal penetration.

86.    The State of Michigan's Department of Licensing and Regulatory Affairs Occupational Health Standards regarding blood borne Infectious Disease mandates use of gloves when exposed to potentially infectious material, including vaginal secretions.

87.    In 1999 an MSU student (Plaintiff Jane A 19 Doe to case No. 1:17-cv-00029) athlete reported to trainers and her coach who were employees of MSU concerns about Defendant Nassar's conduct and "treatment," yet MSU failed to take any action in response to her complaint.

88.    In 2000 Jane TT Doe another MSU student athlete reported to trainers concerns about Defendant Nassar's conduct and "treatment," yet again MSU failed to take any action in response to her complaint.

89.    Because MSU took no action to investigate the 1999 or 2000 complaints and took no corrective action from 2000 to 2016, under the guise of treatment, plaintiff was also sexually assaulted, abused and molested by defendant Nassar by nonconsensual vaginal and anal digital penetration, nonconsensual sexual touching of the vaginal area without the use of gloves or lubricant.

90.    In 2004, Defendant Nassar authored a chapter in Principles of Manual Sports Medicine by Steven J. Karageanes.

91.    In the chapter, Defendant Nassar described the pelvic diaphragm, coccyx, and sacroiliac ligaments as an area of the body not fully examined due to the proximity

to the genitalia and buttocks, and stated it was "referred to as the 'no fly zone' because of the many cultural stigmas in touching this area."

92. Defendant Nassar recommended taking "special measures to explain any examination and techniques applied in this region" and "warning in advance of what you are planning to do," among other suggestions.

93. There is no mention of intravaginal or intra-rectal techniques or procedures in the chapter.

94. As described in detail below, Defendant Nassar often failed to follow his own recommendations with patients as:

   a. he did not explain any intravaginal or intra-rectal techniques to patients or their parents.

   b. he did not warn patients he was going to engage in vaginal or anal digital penetration before doing so.

95. In 2004, a patient reported Defendant Nassar's conduct to her parents and to local law enforcement, Meridian Township Police in 2004.

96. Also in or around 2004, a minor female who was not a patient of Defendant Nassar reported inappropriate touching of a sexual nature to a counselor employed by Defendant MSU.

97. Following receipt of an unrelated complaint regarding a sexual assault on Defendant MSU's campus, between 2014 and 2015 the U.S. Department of Education's Office of Civil Rights (hereinafter "OCR") conducted an investigation regarding the complainant's allegations, another complaint regarding sexual assault and retaliation of 2011 and Defendant MSU's response to said complaints, and their general policies, practices and customs pertaining to their responsibilities under Title IX.

14

98.     The OCR concluded their investigation in 2015 and presented Defendant MSU with a twenty-one page agreement containing measures and requirements to resolve the 2011 and 2014 complaints and to bring Defendant MSU in compliance with Title IX.

99.     While the OCR was conducting their investigation, additional complaints regarding Defendant Nassar's conduct surfaced in 2014.  The victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.

100.    Upon information and belief, Defendant MSU investigated the 2014 complaints through their Office of Institutional Equity.

101.    However, the victim reported facts to Defendant MSU which were omitted or withheld from the investigative report including but not limited to the following:

        a.      Defendant Nassar was sexually aroused while touching her; and

        b.      The appointment with Dr. Nassar did not end until she physical removed his hands from her body.

102.    Three months after initiating the investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "Medically appropriate" and "Not of a sexual nature."

103.    One of the medical experts consulted by the Office of Institutional Equity in investigating the victim's allegations was Brooke Lemmen, D.O.

104.    Following the investigation, upon information and belief, Defendant Nassar became subject to new institutional guidelines including:

15

a.  Defendant Nassar was not to examine or treat patients alone but was to be accompanied by a chaperone such as a resident or nurse.

b.  The alleged "procedure" was altered to ensure there would be little to no skin to skin contact when in certain "regions" and if skin to skin contact was "absolutely necessary" the "procedure" was to be explained in detail with another person in the room for both the explanation and the "procedure"; and,

c.  New people in the practice were to be "orientated" to ensure understanding of the guidelines.

105.  After receiving allegations of "athlete concerns," in approximately summer 2015, Defendant USAG relieved Defendant Nassar of his duties.

106.  Defendant Nassar represented publicly that he "retired" from his duties with Defendant USAG.

107.  At no time did Defendant USAG inform Defendants MSU, MSU Trustees, or other MSU representatives of the concerns that led to Defendant Nassar being relieved from his duties with Defendant USAG.

108.  From July 2014 to September 2016, despite complaints about Nassar's conduct, Defendant MSU continued to permit Defendant Nassar unfettered access to female athletes without adequate oversight or supervision to ensure he was complying with the new guidelines.

109.  Defendant Nassar's employment ended with Defendant MSU on approximately September 20, 2016, only after the MSU Defendants became aware that:

a.  Defendants Nassar and USAG were sued by a former Olympian who alleged she was sexually assaulted by defendant Nassar; and

b.  A former patient of defendant Nassar, Rachel Denhollander, filed a criminal complaint with the Michigan State University Police Department alleging Defendant Nassar sexually assaulted her when she was 15 years old and seeking treatment for back pain as

16

a result of gymnastics. Denhollander's allegations of sexual assault by Defendant Nassar included but were not limited to:

    i.      Massaging her genitals;

    ii.     Penetrating her vagina and anus with his finger and thumb; and

    iii.    Unhooking her bra and massaging her breasts.

110.   Reasons given to Defendant Nassar for his termination included but were not limited to:

    a.     Deviation from "required best practices put in place following the internal sexual harassment investigation conducted ... in 2014;"

    b.     Failure to disclose a 2004 complaint to Meridian Township Police; and

    c.     Dishonesty by Defendant Nassar when Defendant MSU questioned him about receiving prior complaints about the "procedure" at issue.

111.   In late November 2016, Defendant Nassar was arrested and charged with three counts of first-degree criminal sexual conduct with a person under 13 in Ingham County, Michigan. He was later released on $1 million bond.

112.   In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

113.   According to the federal indictment, Defendant Nassar:

    a.     Knowingly received and attempted to receive child pornography between approximately September 18, 2004 and December 1, 2004.

    b.     Knowingly possessed thousands of images of child pornography between approximately February 6, 2003 and September 20, 2016 including images involving a minor who had not attained 12 years of age.

114.    Testimony given by an FBI agent at a hearing held on December 21, 2016, alleged, among other allegations, that Defendant Nassar used a GoPro camera to record video images of children in a swimming pool and that:

    a.    Defendant Nassar's hand can be seen grabbing one girl's hand and shoving it into the vaginal area of another girl; and

    b.    Defendant Nassar's thumb can be seen pressing into a child's vaginal area.

115.    In mid-January 2017, Brooke Lemmen, D.O. submitted a letter of resignation to Mr. Strampel amid allegations that she:

    a.    Removed several boxes of confidential treatment patient records from Defendant MSU's Sports Medicine clinic at Defendant Nassar's request;

    b.    Did not disclose to Defendant MSU that Defendant USAG was investigating Defendant Nassar as of July 2015; and

    c.    Made a staff member feel pressured not to fully cooperate in an internal investigation into allegations against Defendant Nassar.

116.    On February 7, 2017 , a superseding indictment added an additional count of "Destruction and Concealment of Records and Tangible Objects" alleging between September 19, 2016 and September 20, 2016, Defendant Nassar "caused a third-party vendor to permanently delete and destroy all images, records, documents, and files contained on the hard drive of a laptop computer, and the defendant threw in the trash a number of external hard drives."

117.    Amid allegations that Kathie Klages received concerns regarding Defendant Nassar's conduct and "treatment" in 1997 and/or 1998, yet dissuaded the complainant from formally complaining and for her passionate defense of Defendant Nassar when allegations against him surfaced in fall 2016, on February 13, 2017,

Defendant MSU suspended Ms. Klages from her duties as Head Coach of MSU's Women's Gymnastics team.

118. On February 17, 2017, at a preliminary examination, Defendant Nassar was ordered to stand trial on three charges of first-degree criminal sexual conduct with a person under 13 in Ingham County following testimony which included, among others, allegations of digital vaginal penetration at Defendant Nassar's residence.

119. On February 22, 2017, Defendant Nassar was arraigned on 22 counts of first-degree criminal sexual conduct with a person under 13 years old, and 14 counts of third-degree criminal sexual conduct with a person under the age of 13 years old in Ingham County, Michigan and Eaton County, Michigan.

120. In mid-March 2017, Steve Penny resigned as president of Defendant USAG amid allegations Defendant USAG failed to promptly notify authorities of allegations raised against Defendant Nassar.

121. In November 2017 Kerry Perry was named as President and Chief Executive Officer of Defendant USAG.

122. Over several days in May and June 2017, victims testified regarding Defendant Nassar's conduct during appointments held at MSU and Defendant Nassar's residence for medical treatment.

123. Other victims also testified Defendant Nassar engaged in vaginal and anal digital penetration without notice, gloves, lubricant, or consent from their parents.

124. On June 23, 2017, Defendant Nassar was ordered to stand trial on twelve charges of first degree criminal sexual conduct with a person under 13 in Ingham County following conclusion of the preliminary examination hearing which included,

among others, allegations of digital vaginal and anal penetration at MSU and Defendant Nassar's residence.

125.    On July 10, 2017 Defendant Nassar pleaded guilty to the federal charges of child pornography, receipt/attempted receipt of child pornography, and destruction and concealment of records and tangible objects.

126.    Defendant Nassar was sentenced to 60 years in federal prison for the child pornography charges.

## V. SPECIFIC FACTUAL ALLEGATIONS

127.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

128.    Plaintiff, Jane Doe 02, was treated by Defendant Nassar at his office at MSU Sports Medicine Clinic between 2009 - 2016

129.    In 2009, Plaintiff was a 12 year old minor.

130.    Plaintiff Jane Doe 02 presented to Defendant Nassar with complaints of injuries to her back, shoulders, heel, hip, foot, hamstring and shin as a result of gymnastics.

131.    During multiple appointments between 2009 and 2016 at his office at MSU, Defendant Nassar sexually assaulted, abused, molested and molested plaintiff Jane Doe 02.

132.    Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to plaintiff Jane Doe 02.

133.    Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane Doe 02.

134. Plaintiff Jane Doe 02 did not seek treatment or intend to seek treatment with Defendant Nassar for OB/GYN issues.

135. Plaintiffs believe the conduct by Defendant Nassar was sexual assault, abuse and molestation and for Defendant Nassar's pleasure and self-gratification.

## VI. FRAUDULENT CONCEALMENT

### A. Defendant Nassar

136. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

137. Plaintiffs hereby allege that Defendant Nassar committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of claims or causes of action against Defendant Nassar and/or Defendant MSU at the time his sexual assaults occurred making a material representation(s) to Plaintiff involving a past or existing fact by:

     a.    making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

     b.    making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

     c.    making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

     d.    making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

     e.    making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

     f.    making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and

     g.    making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly

after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

138. The material representation(s) to Plaintiff was false, in that Defendant Nassar was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

139. When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist,

140. Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiff, in that Plaintiff should believe that the "treatment[s]" were in fact "treatments," should believe that the "treatment[s]" were proper, appropriate, and legitimate; should not believe that she had been sexually assaulted; should not believe that she had been sexually assaulted so that he could prevent discovery of his sexual assaults; should continue the "treatment[s]" so that he could continue to sexually assault her; should not question and/or report the conduct to appropriate authorities; and should not reasonably believe and not be aware of a possible cause of action that she has against Defendant Nassar and/or Defendant MSU.

141. Plaintiff acted in reliance upon the material representation(s), in that Plaintiff:

      a.    reasonably believed that the "treatment[s]" were in fact "treatment[s]";

      b.    reasonably believed that the "treatment[s]" were proper, appropriate, and legitimate;

      c.    reasonably did not believe that she had been sexually assaulted;

    d.    believed that she should continue the "treatment[s]";

    e.    did not believe that she should question and/or report the conduct to appropriate authorities; and,

    f.    did not reasonably believe that she had, nor was she aware of, a possible cause of action she could bring against Defendant Nassar and/or the MSU Defendants.

142.    Plaintiff thereby suffered injury, in that Plaintiff:

    a.    could not stop the sexual assault;

    b.    continued to undergo the "treatment[s]" and sexual assaults; and

    c.    suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

143.    Defendant Nassar concealed the fraud by making a fraudulent material representation(s) to Plaintiff that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiff involving a past or existing fact by:

    a.    making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

    b.    making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c.    making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes; and

    d.    making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [her] ribs;" and, making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made

23

contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

144.    Concealing the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

      a.    positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

      b.    dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

      c.    prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiff so that he could sexually assault Plaintiff;

      d.    did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

      e.    did not abide by or follow the restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room; and

      f.    at appointments, gave gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

145.    The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

146.    At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant MSU and operated within the scope of his employment and his negligence is imputed to Defendant MSU.

147.    At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

148.    Plaintiff did not know, could not have reasonably known, and was reasonably unaware of a possible cause of action that she had against Defendant Nassar and/or Defendant MSU until the September 12, 2016, publication of a story regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," or sometime thereafter, for the following reasons among others:

  a.    Plaintiff reasonably relied on the fraud committed by Defendant Nassar by his material representations and concealment of the true nature of his "treatment[s]" and his actions;

  b.    Plaintiff was a minor and a young female at the time of the assault and "treatment[s]";

  c.    Plaintiff did not know what a legitimate and appropriately performed intravaginal or intra-anal/rectal treatment was like because she had never experienced and/or had an intravaginal or intra-anal/rectal treatment before;

  d.    Plaintiff had never experienced and/or had an intravaginal treatment before because she had never been treated by a physician and/or therapist that performed them;

  e.    Plaintiff did not know what a legitimate and appropriately performed pelvic, vaginal, anal, and/or breast exam was like because she had never experienced and/or had a pelvic, vaginal, anal, and/or breast exam before;

  f.    Plaintiff had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology, and American Society for Colposcopy and Cervical Pathology;

  g.    Plaintiff had never experienced and/or had a breast exam before because breast exams are not recommended and routinely performed until a female reaches at least the age of 21 years old, pursuant to longstanding recommendations in the literature, expert opinions,

treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology;

h. Because of these recommendations and never having had one of these treatments or exams, it was very difficult if not impossible for Plaintiff to differentiate a legitimate and appropriately performed intravaginal treatment, pelvic, vaginal, anal, and/or breast exam from a sexual assault;

i. Plaintiff could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatment[s]" to observe, question, and/or discover that Defendant Nassar's "treatment[s]" were sexual assaults and inform Plaintiff that they had been sexually assaulted and had a cause of action against Defendant Nassar;

j. In the instances where a parent was present in the room, Defendant Nassar's actions to conceal the physical assaults from the view of the parents prevented the parents from discovering that his "treatment[s]" were sexual assaults and informing Plaintiffs that they had been sexually assaulted and had a cause of action against Defendant Nassar;

k. Based on Neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

l. Based on Neuroscience, as the prefrontal cortex of the brain matures teenagers are able to make better judgments;

m. Plaintiff was intimidated by Defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatment[s]" were legitimate and appropriate;

n. Plaintiff trusted Defendant Nassar due to his notoriety and reputation;

o. Plaintiff trusted Defendant Nassar because he groomed her to believe that his "treatment[s]" were in fact legitimate "treatments";

p. Plaintiff trusted and felt that Defendant Nassar was a friend because he gave Plaintiff, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust";

q. Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action because she was a minor and a young female who was not knowledgeable or aware of the civil legal system;

r. Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action because she was a minor and/or young female who was not knowledgeable or aware of any remedy at law;

s. Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been sexually assaulted by Defendant Nassar over the past few decades, none of them had a reason to believe or be aware that they could possibly sue or had a possible cause of action in the past; and none of them have ever sued him in the past;

t. Plaintiff was never told by Defendant Nassar that his conduct was sexual in nature and not legitimate and appropriate "treatment" or to conceal the sexual conduct from their parents and others, unlike other victims of sexual abuse who are typically told by their abusers that their conduct is of a sexual nature and to conceal the sexual conduct from their parents and others;

u. Plaintiff was compelled by Defendant Nassar to undergo "treatment[s]" like other athletes if she wanted to continue being involved in her sport, therefore the "treatment[s]" were legitimate and appropriate; and

v. Plaintiff was a minor and young athlete, therefore she was easily suggestible; and, Plaintiff had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar.

**B.    The MSU Defendants**

149.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

150.    Plaintiffs hereby allege that Defendant MSU committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Defendant Nassar and/or Defendant MSU at the time his sexual assaults

occurred by Defendant Nassar making a material representation(s) to Plaintiffs involving a past or existing fact by:

> a.  making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;
>
> b.  making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;
>
> c.  making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;
>
> d.  making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs"; and
>
> e.  making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place when it was not, and while he was digitally penetrating Plaintiff all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

151.  The material representation(s) to Plaintiff were false, in that Defendant Nassar was actually performing the "treatment[s]" for his own sexual gratification and pleasure, evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

152.  When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist;

153.  Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiff, in that Plaintiff:

> a.  should believe that the "treatment[s]" were in fact "treatment[s]";
>
> b.  should believe that the "treatment[s]" were proper, appropriate, and legitimate;

28

      c.        should not believe that she had been sexually assaulted;

      d.        should not believe that she had been sexually assaulted so that he could prevent discovery of his sexual assaults;

      e.        should continue the "treatment[s]" so that he could continue to sexually assault her;

      f.        should not question and/or report the conduct to appropriate authorities; and

      g.        should not reasonably believe and not be aware of a possible cause of action that she had against Defendant Nassar and/or Defendant MSU.

154. Plaintiff acted in reliance upon the material representation(s), in that Plaintiff:

      a.        reasonably believed that the "treatment[s]" were in fact "treatment[s]";

      b.        reasonably believed that the "treatment[s]" were proper, appropriate, and legitimate;

      c.        reasonably did not believe that she had been sexually assaulted;

      d.        believed that she should continue the "treatment[s];"

      e.        did not believe that she should question and/or report the conduct to appropriate authorities; and,

      f.        did not reasonably believe that she had and was not aware of a possible cause of action that they had against Defendant Nassar and/or Defendant MSU.

155. Plaintiff thereby suffered injury, in that Plaintiff:

      a.        could not stop the sexual assault;

      b.        continued to undergo the "treatment[s]" and sexual assaults; and,

      c.        suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and

will continue to suffer pain of mind and body, prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

156. Defendant Nassar concealed the fraud by making a fraudulent material representation(s) to Plaintiff that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiff involving a past or existing fact by:

    a.    making the statement, explaining that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

    b.    making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c.    making the statement, explaining that his acts and/or conduct was "checking your sternum;"

    d.    making the statement, explaining that his acts and/or conduct was doing a "breast exam;"

    e.    making the statement, explaining that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

    f.    making the statement, explaining that his acts and/or conduct was "attempting to manipulate their ribs;" and,

    g.    making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

157. Defendant Nassar concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

    a.    positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

b.  dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

c.  prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of patients so that he could sexually assault those patients;

d.  did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver to be in the room during the examination and treatment of minors and female patients;

e.  did not abide by or follow the restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room; and,

f.  gave patients, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

158.  Defendant MSU's sports medicine trainers, trainers, employees, staff, managers, supervisors, directors, agents, apparent agents, and/or servants made material representation(s) to Plaintiff involving a past or existing fact by making statements that:

a.  Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatment[s]";

b.  Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatment[s]";

c.  Defendant Nassar's conduct was "not sexual abuse";

d.  Defendant Nassar was a "world-renowned doctor"; and

e.  Defendant Nassar's conduct and "treatment[s]" were "medically appropriate" and "not of a sexual nature" because the complainant "didn't understand the 'nuanced difference' between sexual assault and an appropriate medical procedure."

159.    The material representation(s) to Plaintiff were false, in that the MSU Defendants had previously received strikingly similar complaints of abuse by Defendant Nassar from other students and student athletes and knew that the appropriateness of his "treatment[s]" had been questioned in the past.

160.    The MSU Defendants made the material representation(s), they knew that they were false and/or made the material representation(s) recklessly, without any knowledge of their truth and as a positive assertion, in that they knew that Defendant MSU had previously received strikingly similar complaints of abuse by Defendant Nassar from other students and student athletes and knew that the appropriateness of his "treatment[s]" had been questioned in the past.

161.    The MSU Defendants made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiff, in that Plaintiff:

      a.      should believe that the "treatment[s]" were in fact "treatment[s]";

      b.      should believe that the "treatment[s]" were proper, appropriate, and legitimate;

      c.      should not believe that she had been sexually assaulted;

      d.      should not question and/or report the conduct to other authorities; and

      e.      should not reasonably believe and not be aware of a possible cause of action that she had against Defendant Nassar and/or the MSU Defendants.

162.    Plaintiff acted in reliance upon the material representation(s), in that Plaintiff:

      a.      reasonably believed that the "treatment[s]" were in fact "treatment[s]";

      b.      reasonably believed that the "treatment[s]" were proper, appropriate, and legitimate;

      c.      reasonably did not believe that she had been sexually assaulted;

d.   believed that she should continue the "treatment[s]";

e.   did not believe that she should question and/or report the conduct to appropriate authorities; and

f.   did not reasonably believe that she had and was not aware of a possible cause of action that they had against Defendant Nassar and/or Defendant MSU.

163.   Plaintiff thereby suffered injury, in that Plaintiff:

a.   could not stop the sexual assault;

b.   continued to undergo the "treatment[s]" and sexual assaults; and

c.   suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

164.   The MSU Defendants concealed the fraud by making a fraudulent material representation(s) to Plaintiff that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they made a material representation(s) to Plaintiff involving a past or existing fact by:

a.   making the statement that Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatment[s]";

b.   making the statement that Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatment[s]";

c.   making the statement that Defendant Nassar's conduct was "not sexual abuse," that he was a "world-renowned doctor"; and

d.   making the statement that Defendant Nassar's conduct and "treatment[s]" were "medically appropriate" and "[n]ot of a sexual nature" because the complainant "didn't understand the 'nuanced difference' between sexual assault and an appropriate medical procedure."

33

165.   The MSU Defendants concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they:

      a.    ignored, refused, and failed to inquire, question, and investigate the complaints and take action regarding Defendant Nassar's "treatment[s]";

      b.    did not create a policy to require adults, parents, chaperones, guardians, and/or caregivers presence during an examination of a minor or female by a physician; and

      c.    did not enforce the restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room.

166.   Plaintiff did not know, could not have reasonably known, and was reasonably unaware of a possible cause of action that she had against Defendant Nassar and/or the MSU Defendants until the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," or shortly thereafter, for the following:

      a.    Plaintiff reasonably relied on the fraud committed by Defendant Nassar by his material representations and concealment of the true nature of his "treatment[s]" and his actions;

      b.    Plaintiff was a minor and a young female at the time of the assault and "treatment[s]";

      c.    Plaintiff did not know what a legitimate and appropriately performed intravaginal or intra-anal/rectal treatment was like because she had never experienced and/or had an intravaginal or intra-anal/rectal treatment before;

      d.    Plaintiff had never experienced and/or had an intravaginal treatment before because she had never been treated by a physician and/or therapist that performed them;

      e.    Plaintiff did not know what a legitimate and appropriately performed pelvic, vaginal, anal, and/or breast exam was like because she had

never experienced and/or had a pelvic, vaginal, anal, and/or breast exam before;

f.      Plaintiff had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology, and American Society for Colposcopy and Cervical Pathology;

g.      Plaintiff had never experienced and/or had a breast exam before because breast exams are not recommended and routinely performed until a female reaches at least the age of 21 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology;

h.      Because of these recommendations and never having had one of these treatments or exams, it was very difficult if not impossible for Plaintiff to differentiate a legitimate and appropriately performed intravaginal treatment, pelvic, vaginal, anal, and/or breast exam from a sexual assault;

i.      Plaintiff could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatment[s]" to observe, question, and/or discover that his "treatment[s]" were sexual assaults and inform Plaintiff that she had been sexually assaulted and had a cause of action against Defendant Nassar;

j.      In the instances where a parent was present in the room, Defendant Nassar's actions to conceal the physical assaults from the view of the parents prevented the parents from discovering that his "treatment[s]" were sexual assaults and informing Plaintiff that she had been sexually assaulted and had a cause of action against Defendant Nassar;

k.      Based on neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

35

l.      Based on neuroscience, as the prefrontal cortex of the brain matures teenagers are able to make better judgments;

m.     Plaintiff was intimidated by Defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatment[s]" were legitimate and appropriate;

n.      Plaintiff trusted Defendant Nassar due to his notoriety and reputation;

o.      Plaintiff trusted Defendant Nassar because he groomed them to believe that his "treatment[s]" were in fact legitimate "treatment[s]";

p.      Plaintiff trusted and felt that Defendant Nassar was a friend because he gave Plaintiff, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain her trust;"

q.      Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action because she was a minor and/or young female who was not knowledgeable or aware of the civil legal system;

r.      Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action because she was a minor and/or young female who was not knowledgeable or aware of any remedy at law;

s.      Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been sexually assaulted by Defendant Nassar over the past few decades, none of them had a reason to believe or be aware that they could possibly sue or had a possible cause of action in the past; and none of them have ever sued him in the past;

t.      Plaintiff was never told by Defendant Nassar that his conduct was sexual in nature and not legitimate and appropriate "treatment[s]" and to conceal the sexual conduct from their parents and others, unlike other victims of sexual abuse who are typically told by their abusers that their conduct is of a sexual nature and to conceal the sexual conduct from their parents and others;

u.      Plaintiff was compelled by Defendant Nassar to undergo "treatment[s]" like other athletes if she wanted to continue being involved in her sport therefore the "treatment[s]" were legitimate and appropriate;

v.   Plaintiff was a minor and young athlete, therefore she was easily suggestible; and, Plaintiff had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar;

w.   Plaintiff had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar;

x.   Plaintiff reasonably relied upon the fraud committed by Defendant MSU by their material representations and concealment of the true nature of Defendant Nassar's "treatment[s]" and his actions;

y.   Plaintiff trusted that Defendant MSU would protect Plaintiff from harm and not hire, employee, and/or retain a physician that had, was or would perform illegitimate and/or inappropriate "treatment[s]", engage in inappropriate conduct, and/or sexually assault patients, students, and/or athletes;

z.   Plaintiff was never told by Defendant MSU that Defendant Nassar's conduct and "treatment[s]" were inappropriate and sexual assault, to the contrary Plaintiff was told that Defendant Nassar's conduct and "treatment[s]" were appropriate and legitimate "treatment[s]", "not sexual abuse", "medically appropriate", and "[n]ot of a sexual nature" from a "world-renowned" and "Olympic doctor," who "knew what he was doing" and that Plaintiff, because of her age and inexperience with intravaginal treatment, pelvic, vaginal, anal, and/or breast exams, "didn't understand the 'nuanced difference' between sexual assault and an appropriate medical procedure";

aa.   Plaintiff reasonably relied on Defendant MSU to protect her and Defendant MSU's statements; and

bb.   Plaintiff was compelled by Defendant MSU to undergo "treatment[s]" like other athletes if she wanted to continue being involved in the relevant sport therefore the "treatment[s]" were legitimate and appropriate.

167.   The actions and inactions of the MSU Defendants and Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

168.   At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant MSU and operated within the

scope of his employment and his Fraudulent Concealment is imputed to Defendant MSU.

169.    The actions and inactions of the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of the MSU Defendants, as described in the preceding paragraphs, constituted Fraudulent Concealment.

170.    At all times pertinent to this action, the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of Defendant MSU were agents, apparent agents, servants, and employees of Defendant MSU and operated within the scope of their employment and their Fraudulent Concealment is imputed to Defendant MSU.

171.    At all times material hereto, Plaintiffs were entirely free of any negligence contributing to  the injuries and damages hereinafter alleged.

**C.    Defendant USA Gymnastics**

172.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

173.    Plaintiff incorporates by reference the Fraud claims made below and hereby alleges that Defendant USAG committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiff's claims and that Plaintiff had a cause of action against Defendant Nassar and/or Defendant USAG at the time his sexual assaults occurred by Defendant Nassar making a material representation(s) to Plaintiff involving a past or existing fact by:

> a.    making the statement, explaining that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

> b.    making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

38

     c.     making the statement, explaining that his acts and/or conduct was "checking your sternum";

     d.     making the statement, explaining that his acts and/or conduct was doing a "breast exam";

     e.     making the statement, explaining that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

     f.     making the statement, explaining that his acts and/or conduct was "attempting to manipulate their ribs"; and

     g.     making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

174.    The material representation(s) to Plaintiff by Defendant Nassar were false, in that he was actually performing the "treatment[s]" for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

175.    When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist;

176.    Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiff, in that Plaintiff:

     a.     should believe that the "treatment[s]" were in fact "treatments";

     b.     should believe that the "treatment[s]" were proper, appropriate, and legitimate;

     c.     should not believe that she had been sexually assaulted so that he could prevent discovery of his sexual assaults;

    d.     should continue the "treatment[s] so that he could continue to sexually assault her";

    e.     should not question and/or report the conduct to appropriate authorities; and

    f.     should reasonably believe that she had and was not aware of a possible cause of action that she had against Defendant Nassar and/or Defendant USAG.

177.    Plaintiff acted in reliance upon Defendant Nassar's material representation(s), in that Plaintiff:

    a.     reasonably believed that the "treatment[s]" were in fact "treatment[s]";

    b.     reasonably believed that the 'treatments" were proper, appropriate, and legitimate;

    c.     reasonably did not believe that she had been sexually assaulted;

    d.     believed that she should continue the "treatment[s]";

    e.     reasonably did not believe that she should question and/or report the conduct to appropriate authorities; and

    f.     reasonably did not believe that she had and was not aware of a possible cause of action that she had against Defendant Nassar and/or Defendant USAG.

178.    Plaintiff thereby suffered injury, in that Plaintiff:

    a.     could not stop the sexual assault;

    b.     continued to undergo the "treatment[s]" and sexual assaults; and

    c.     suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life

179. Defendant Nassar concealed the fraud by making a fraudulent material representation(s) to Plaintiff that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiff involving a past or existing fact by:

      a.    making the statement, explaining that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

      b.    making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

      c.    making the statement, explaining that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes; and

      d.    making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

180 Defendant Nassar concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

      a.    positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

      b.    dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

      c.    prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiff so that he could sexually assault Plaintiff;

      d.    did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

41

e.  did not abide by or follow Defendant USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, which he was a part of creating by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver; and

f.  gave patients, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

181.  The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

182.  At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant USAG and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant USAG.

183.  At all times material hereto, Plaintiff was entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

## VII.   CLAIMS AGAINST MICHIGAN STATE UNIVERSITY DEFENDANTS

**COUNT ONE:          VIOLATION OF TITLE IX**
**20 U.S.C. §1681(a), *et seq.***
**DEFENDANTS MSU, MSU TRUSTEES**

184.  Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

185.  Title IX's statutory language states, "No person in the United States shall on the basis of sex, be ... subject to discrimination under any education program or activity receiving Federal financial assistance ..."

186.  Plaintiff is a "person" under the Title IX statutory language.

187.    Defendant MSU receives federal financial assistance for its education program and is therefore subject to the provisions of Title D (of the Education Act of 1972, 20 U.S.C. § 1681(a), *et seq.*

188.    Defendant MSU is required under Title D to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

189.    The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students and third parties.

190.    Defendant Nassar's actions and conduct were carried out under one of Defendant MSU's programs, which provides medical treatment to students, athletes, and the public.

191.    Defendant Nassar's conduct and actions toward Plaintiff, being nonconsensual digital vaginal and anal penetration, touching of Plaintiff's vaginal area, and touching of Plaintiff's breasts constitutes sex discrimination under Title IX.

192.    As early as 1999 and/or 2000, an "appropriate person" at Defendant MSU had actual knowledge of the sexual assault, abuse, and molestation committed by Defendant Nassar.

193.    Specifically, the MSU Defendants were notified about Defendant Nassar's sexual abuse and molestation by an individual in or around 1999 and by another patient in 2000 on more than one occasion.

194.    The MSU Defendants failed to carry out their duties to investigate and take corrective action under Title IX following the complaints of sexual assault, abuse, and molestation in or around 1999 and/or 2000.

43

195.    The MSU Defendants were notified again in 2014 of Defendant Nassar's conduct when a victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.

196.    The victim reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

197.    Defendant Nassar was sexually aroused while touching her;

198.    The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

199.    Three months after initiating an investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."

200.    Following the investigation, upon information and belief, Defendant Nassar became subject to new institutional guidelines, one of which - it is believed - was that Defendant Nassar was not to examine or treat patients alone.

201.    The MSU Defendants failed to adequately supervise or otherwise ensure Defendant Nassar complied with the newly imposed institutional guidelines even though the MSU Defendants had actual knowledge that Defendant Nassar posed a substantial risk of additional sexual abuse of females over whom he had unfettered access.

202.    After the 2014 complaints Defendant Nassar continued to sexually assault, abuse, and molest individuals, including but not limited to Plaintiff.

203. The MSU Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

    a.   failing to investigate and address other victim's allegations as required by Title IX;

    b.   failing to adequately investigate and address the 2014 complaint regarding Defendant Nassar's conduct; and

    c.   failing to institute corrective measures to prevent Defendant Nassar from violating and sexually abusing other students and individuals, including minors.

204. The MSU Defendants acted with deliberate indifference as their lack of response to the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the known circumstances, Defendant Nassar's actions with female athletes, and his access to young girls and young women.

205. The MSU Defendants' deliberate indifference was confirmed by the Department of Education's investigation into Defendant MSU's handling of sexual assault and relationship violence allegations which revealed:

    a.   A sexually hostile environment existed and affected numerous students and staff on Defendant MSU's campus.

    b.   That the MSU Defendants' failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner caused and may have contributed to a continuation of the sexually hostile environment.

    c.   The MSU Defendants' responses were clearly unreasonable as Defendant Nassar continued to sexually assault female athletes and other individuals until he was discharged from the University in 2016.

    d.   Between the dates of approximately 1996 and 2016, the MSU Defendants acted in a deliberate, grossly negligent, and/or reckless manner when they failed to reasonably respond to Defendant Nassar's sexual assaults and sex-based harassment of individuals on and off school premises.

206.    The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received notice subjected Plaintiff to further harassment and a sexually hostile environment, effectively denying her all access to educational opportunities at MSU, including medical care.

207.    As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT TWO:          VIOLATION OF CIVIL RIGHTS**
**42 U.S.C. § 1983**
**MSU DEFENDANTS AND DEFENDANT NASSAR**

208.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

209.    Plaintiff, a female, is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

210.    Plaintiff enjoys the constitutionally protected due process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

211.    At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

212.    The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' positions should have known.

46

213. The MSU Defendants have the ultimate responsibility and authority to train and supervise their employees, agents, and/or representatives, in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice, failed to do so with deliberate indifference.

214. As a matter of custom, policy, and and/or practice, the MSU Defendants had and have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to students, visitors, faculty, staff, or other employees, agents, and/or representatives, and failed to do so with deliberate indifference.

215. The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation on their campus and premises, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

216. Defendant MSU's internal policies provide that "[a]ll University employees ... are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." The policies state further: "[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event..."

217. Defendant MSU's aforementioned internal policies were violated in or around 1999 when a patient reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and a coach and no action was taken to address her complaints.

218. Defendant MSU's aforementioned internal policies were violated in 2000 when a patient reported sexual assault, abuse, and molestation by Defendant Nassar to

MSU representatives including trainers and no action was taken to address her complaints.

219.   The MSU Defendants' failure to address these patients' complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

220.   Additionally, the MSU Defendants' failure to properly address the 2014 complaint regarding Defendant Nassar's conduct also led to others being victimized, sexually assaulted, abused and molested by Defendant Nassar.

221.   Ultimately, the MSU Defendants failed to adequately and properly investigate the complaints of Plaintiff or other similarly-situated individuals including but not limited to failing to:

    a.    perform a thorough investigation into improper conduct by Defendant Nassar after receiving complaints in 1999 and 2000;

    b.    thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the conduct of Defendant Nassar;

    c.    recognize sexual assault when reported in 2014 and permitting University officials to deem sexual assault as "medically appropriate" and "not of a sexual nature"; and

    d.    ensure all institutional guidelines issued following the 2014 investigation into Defendant Nassar's conduct were satisfied.

222.   As indicated in the U.S. Department of Education Office of Civil Rights report, the MSU Defendants had a culture that permitted a sexually hostile environment to exist affecting numerous individuals on Defendant MSU's campus, including Plaintiff.

223.   Also indicated in the report was Defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence

48

in a prompt and equitable manner which caused and may have contributed to a continuation of the sexually hostile environment.

224.    By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiff, and by failing to appropriately respond to reports of Defendant Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, the MSU Defendants are liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

225.    The MSU Defendants are also liable to Plaintiff under 42 U.S.C. § 1983 for maintaining customs, policies, and practices which deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

226.    The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff with impunity.

227.    As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT THREE:**        **FAILURE TO TRAIN AND SUPERVISE**
                        **42 U.S.C. § 1983**
                        **MSU DEFENDANTS**

228.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

229.    The MSU Defendants have the ultimate responsibility and authority to train and supervise their employees, agents, and/or representatives including Defendant Nassar and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

230.    The MSU Defendants failed to train and supervise their employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

    a.    Perceive, report, and stop inappropriate sexual conduct on campus;

    b.    Provide diligent supervision over student-athletes and other individuals;

    c.    Report suspected incidents of sexual abuse or sexual assault;

    d.    Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campus premises;

    e.    Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and

    f.    Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

    b.    The above list of duties is not exhaustive.

231.    The MSU Defendants failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties which led to violations of Plaintiff's rights.

232.    As a result, the MSU Defendants deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

233.    As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT FOUR:      GROSS NEGLIGENCE
MSU DEFENDANTS AND
DEFENDANT NASSAR**

234.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

235.    The MSU Defendants owed Plaintiff a duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

236.    Defendant Nassar owed Plaintiff a duty of due care in carrying out medical treatment as an employee, agent, and/or representative of the MSU Defendants.

237.    By seeking medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

51

238. The MSU Defendants' failure to adequately supervise Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatment[s]" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

239. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

240. The MSU Defendants' conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

241. The MSU Defendants' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiff.

242. The MSU Defendants breached duties owed to Plaintiff and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiff's health, safety, constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

243. As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT FIVE:**          **NEGLIGENCE**
**MSU DEFENDANTS AND**
**DEFENDANT NASSAR**

244.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

245.    The MSU Defendants owed Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives and/or agents.

246.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

247.    Defendant Nassar owed Plaintiff a duty of ordinary care.

248.    The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

249.    The MSU Defendants had notice through their own employees, agents, and/or representatives as early as 1999, again in 2000, and again in 2014 of complaints of a sexual nature related to Defendant Nassar's purported "treatment[s]" with young girls and women.

250.    The MSU Defendants should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

251.    The MSU Defendants' failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

252.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of the duty to use ordinary care.

253.    As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life.

**COUNT SIX:          VICARIOUS LIABILITY**
**                    MSU DEFENDANTS**

254.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

255.    Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

256.    Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

257.    The MSU Defendants employed and/or held Defendant Nassar out to be their agent and/or representative from approximately 1996 to 2016.

258.    Defendant MSU's website contains hundreds of pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.

259.    The MSU Defendants are vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, and/or agency with the MSU Defendants and while he had unfettered access to young female athletes on MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

260.    As a direct and/or proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of the MSU Defendants, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT SEVEN:         EXPRESS/IMPLIED AGENCY
                       MSU DEFENDANTS**

261.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

262.    An agent is a person who is authorized by another to act on its behalf.

263.    The MSU Defendants intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

264.    On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

265.    Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above, acts that were performed during the course of his

55

employment, agency, and/or representation with the MSU Defendants and while he had unfettered access to young female athletes.

266.  Plaintiff was injured because she relied on the MSU Defendants to provide employees, agents, and or representatives who would exercise reasonable skill and care.

267.  As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representative of the MSU Defendants, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life.

**COUNT EIGHT:          NEGLIGENT SUPERVISION**
**                                   MSU DEFENDANTS**

268.  Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

269.  The MSU Defendants had a duty to provide reasonable supervision of their employee, agent and/or representative, Defendant Nassar, while he was in the course of his employment, agency or representation with the MSU Defendants and while he interacted with young female athletes including Plaintiff.

270.  It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations

against him had or would sexually abuse children, including Plaintiff, unless properly supervised.

271.    The MSU Defendants by and through their employees, agents, managers and/or assigns, such as President Simon, President McPherson, Dean Strampel or Dr. Kovan knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

272.    The MSU Defendants breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiff.

273.    The aforementioned sexual abuse occurred while Plaintiff and Defendant Nassar were on the premises of Defendant MSU, and while Defendant Nassar was acting in the course of his employment, agency, and/or representation of the MSU Defendants.

274.    The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff with impunity.

275.    As a direct and/or proximate result of the MSU Defendants' negligent supervision, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT NINE:**               **NEGLIGENT FAILURE TO WARN OR PROTECT**
                              **MSU DEFENDANTS**

276.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

277.    The MSU Defendants knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

278.    As early as 1999, the MSU Defendants had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

279.    The MSU Defendants knew or should have known Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

280.    The MSU Defendants had a duty to warn or protect Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

281.    The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar as an employee, agent, and or representative of the MSU Defendants and Plaintiff.

282.    The MSU Defendants breached said duty by failing to warn Plaintiff and/or by failing to take reasonable steps to protect Plaintiffs from Defendant Nassar.

283.    The MSU Defendants breached its duties to protect Plaintiffs by failing to:

      a.    respond to allegations of sexual assault, abuse, and molestation;

      b.    detect and/or uncover evidence of sexual assault, abuse, and molestation; and,

      c.    investigate, adjudicate, and terminate Defendant Nassar's employment with Defendant MSU prior to 2016.

284.   The MSU Defendants failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in violations of Plaintiff's rights.

285.   The MSU Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

286.   As a direct and/or proximate result of the MSU Defendants' negligent supervision, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT TEN:          NEGLIGENT FAILURE TO TRAIN OR EDUCATE
                              MSU DEFENDANTS**

287.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

288.   The MSU Defendants breached their duty to take reasonable protective measures to protect Plaintiff and others from the risk of sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiff and other individuals (including minors) about how to avoid such a risk.

289.   The MSU Defendants failed to implement reasonable safeguards to:

a.      Prevent acts of sexual assault, and

59

      b.    Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiff and other young athletes.

290.  As a direct and/or proximate result of the MSU Defendants' negligent failure to train or educate, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT ELEVEN:**        **NEGLIGENT RETENTION**
                                            **MSU DEFENDANTS**

291.  Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

292.  The MSU Defendants had a duty to exercise due care when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives, but they breached that duty.

293.  The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report and address complaints about his conduct of which they knew or should have known.

294.  The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

295.   The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiff and an unknown number of other individuals.

296.   The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiff as well as other minors and young adults.

297.   As a direct and/or proximate result of the MSU Defendants' negligent retention, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity.

**COUNT TWELVE:       INTENTIONAL INFLICTION OF
                      EMOTIONAL DISTRESS
                      MSU DEFENDANTS**

298.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

299.   The MSU Defendants allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

300.   A reasonable person would not expect the MSU Defendants to tolerate or permit their employee or agent to carry out sexual assault, abuse, or molestation after they knew or should have known of complaints and claims of sexual assault and abuse occurring during Defendant Nassar' s "treatment[s]".

301.    The MSU Defendants held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiff and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

302.    The MSU Defendants protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community.

303.    A reasonable person would not expect the MSU Defendants to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation.

304.    The MSU Defendants' conduct as described above was intentional and/or reckless.

305.    As a direct and/or proximate result of the MSU Defendants' conduct, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT THIRTEEN:      FRAUD AND MISREPRESENTATION
                                        MSU DEFENDANTS**

306.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

307.    From approximately 1996 to September 2016, the MSU Defendants represented to Plaintiff and the public that Defendant Nassar was a competent and safe physician.

308.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the

MSU Defendants represented to Plaintiff and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

309.    The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiff and an unknown number of other individuals.

310.    As of 1999 and 2000, the MSU Defendants knew their representations of Defendant Nassar were false because patients had complained of Defendant Nassar's conduct to MSU representatives.

311.    Although MSU Defendants were informed of Defendant Nassar's conduct they failed to investigate, remedy, or in any way address the patients' complaints.

312.    The MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

313.    Additional complaints against Defendant Nassar surfaced in 2014, however, because of Defendant MSU's culture which included existence of a sexually hostile environment on Defendant MSU's campus and premises and the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which in turn caused and may have contributed to a continuation of the sexually hostile environment, Defendant Nassar was permitted to continue employment and sexually abuse, assault, and molest Plaintiff and an unknown number of other individuals.

314.    Between the time of the 2011 complaint and September 2016, the MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

315.   Plaintiff relied on the assertions of the MSU Defendants and continued to seek treatment from Defendant Nassar in the wake of known concerns and dangers.

316.   Plaintiff was subjected to sexual assault, abuse, and molestation as a result of the MSU Defendants' fraudulent misrepresentations regarding Defendant Nassar.

317.   As a direct and/or proximate result of the MSU Defendants' fraudulent misrepresentations, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

## VII.   CLAIMS AGAINST USA GYMNASTICS

**COUNT FOURTEEN:   GROSS NEGLIGENCE
DEFENDANT USAG AND
DEFENDANT NASSAR**

318.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

319.   Defendant USAG owed Plaintiff a duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with its employees, representatives, and/or agents.

320.   Plaintiff is or was a member of USAG, participated in USAG sanctioned events, and was knowledgeable of and referred to Defendant Nassar through USAG affiliations.

64

321.     Defendant Nassar owed Plaintiff a duty to use due care in his capacity as an employee, representative, and/or agent of Defendant USAG.

322.     By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

323.     Defendant USAG's failure to adequately supervise Defendant Nassar was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

324.     Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant USAG was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

325.     Defendant USAG's conduct demonstrated a willful disregard for necessary precautions to reasonably protect Plaintiff's safety.

326.     Defendant USAG's conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiff.

327.     Defendant USAG breached duties owed to Plaintiff and was grossly negligent by its actions described above, including but not limited to their failure to notify MSU about the reasons for Nassar's separation from USAG and more broadly the issues surrounding sexual abuse in gymnastics and warning signs and reporting requirements. Said acts were committed with reckless disregard for Plaintiff's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

65

328.   As a direct and/or proximate result of Defendant USAG'S actions and/or inactions, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT FIFTEEN:        NEGLIGENCE**
**DEFENDANT USAG AND**
**DEFENDANT NASSAR**

329.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

330.   Defendant USAG owed Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while being treated by their employees, representatives, and agents.

331.   Plaintiff, as a member of the USAG, had a reasonable expectation that the USAG was recommending competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse, and molestation.

332.   By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

333.   Defendant Nassar owed Plaintiff a duty of ordinary care in carrying out medical treatment.

334.   Defendant USAG's failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

335.   Defendant USAG's failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

336.   Defendant USAG's failure to inform Plaintiff and the public of the allegations and concerns leading to Defendant Nassar's separation from USAG was a breach of ordinary care.

337.   Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff was a breach of the duty to use ordinary care.

338.   As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT SIXTEEN:          VICARIOUS LIABILITY
                         DEFENDANT USAG**

339.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

340.   Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

341.   Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

67

342.    Defendant USAG's website contains sites portraying Defendant Nassar as the recipient of distinguished awards and boasts him as having been "instrumental" to the success of USA gymnastics.

343.    Defendant USAG employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1986 to 2015.

344.    Defendant USAG is vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, or agency with Defendant USAG and while he had unfettered access to young female athletes.

345.    As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life

**COUNT SEVENTEEN:    EXPRESS/IMPLIED AGENCY
                      DEFENDANT USAG**

346.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

347.    An agent is a person who is authorized by another to act on its behalf.

348.    Defendant USAG intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

68

349.    On the basis of those representations, Plaintiff reasonably believed Defendant Nassar was acting as an employee, agent, and/or representation of Defendant USAG.

350.    Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above carried out through his employment, agency, and/or representation with Defendant USAG.

351.    Plaintiff was injured because she relied on Defendant USAG to provide employees or agents who would exercise reasonable skill and care.

352.    As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT EIGHTEEN:    NEGLIGENT SUPERVISION**
**DEFENDANT USAG**

353.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

354.    Defendant USAG had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency and/or representation of Defendant USAG and while he interacted with young female athletes including Plaintiff.

355.   It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar, who had prior allegations against him had or would sexually abuse children, including Plaintiff, unless properly supervised.

356.   Defendant USAG by and through its employees, agents, managers, and/or assigns such as Mr. Penny or Mr. Colarossi, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults.

357.   Defendant USAG breached its duty to provide reasonable supervision of Defendant Nassar, and its failure permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiff.

358.   The aforementioned sexual abuse occurred while Defendant Nassar was acting in the course of his employment, agency and/or representation of Defendant USAG.

359.   Defendant USAG tolerated, authorized, and/or permitted a custom, policy, practice, or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff  with impunity.

360.   As a direct and/or proximate result of Defendant USAG's negligent supervision, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full

70

enjoyment of life, and has sustained and will continue to sustain loss of earnings and earning capacity.

**COUNT NINETEEN:      NEGLIGENT FAILURE TO WARN OR PROTECT DEFENDANT USAG**

361.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

362.    Given the direct or indirect knowledge of sexual abuse in youth sports and gymnastics in particular, it was reasonably foreseeable that sexual abuse of minors may occur if proper procedures were not taken by Defendant USAG.

363.    Defendant USAG knew or should have known that Defendant Nassar posed a risk of harm to Plaintiff or those in Plaintiff's situation.

364.    Defendant USAG had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

365.    Defendant USAG knew or should have known that Defendant Nassar previously committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

366.    Defendant USAG had a duty to warn or protect Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

367.    The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar in his capacity as employee, agent, and/or representative of Defendant USAG and Plaintiff.

368.    Defendant USAG breached said duty by failing to warn Plaintiff and/or by failing to take reasonable steps to protect Plaintiff from Defendant Nassar.

369.   Defendant USAG breached its duties to protect Plaintiff by failing to detect and/or uncover evidence of sexual abuse and sexual assault, investigate Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from USAG affiliation and USAG sanctioned events.

370.   Defendant USAG failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant USAG, resulting in violation of Plaintiff's rights.

371.   Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

372.   As a direct and/or proximate result of Defendant USAG's negligent failure to warn or protect, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT TWENTY:       NEGLIGENT FAILURE TO TRAIN OR EDUCATE DEFENDANT USAG**

373.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

374.   Defendant USAG breached its duty to take reasonable protective measures to protect Plaintiff and other individuals from the risk of <u>childhood</u> sexual abuse and/or sexual assault by Defendant Nassar, such as by a failure to properly train

or educate Plaintiffs and other individuals (including minors) about how to avoid such a risk.

375.    Defendant USAG failed to implement reasonable safeguards to:

    a.    Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

    b.    Avoid placing Defendant Nassar in positions where he would have unsupervised contact and interaction with Plaintiff and other young athletes.

376.    As a direct and/or proximate result of Defendant USAG's negligent failure to train or educate, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life.

## COUNT TWENTY-ONE: NEGLIGENT RETENTION
### DEFENDANT USAG

377.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

378.    Defendant USAG had a duty to exercise due care when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives, but failed to do so.

379.    Defendant USAG was negligent in the retention of Defendant Nassar as an employee, agent, and/or representative, and in its failure to adequately investigate, report, and address complaints about Defendant Nassar's conduct of which it knew or should have known.

380.    Defendant USAG was negligent in the retention of Defendant Nassar after it discovered, or reasonably should have discovered, Defendant Nassar's conduct reflected a propensity for sexual misconduct.

381.    Defendant USAG's failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiff as well as an unknown number of other individuals.

382.    The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiff as well as other minors and young adults.

383.    As a direct and/or proximate result of Defendant USAG's negligent retention, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT TWENTY-TWO: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS DEFENDANT USAG**

384.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

385.    Defendant USAG allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

74

386.   A reasonable person would not expect Defendant USAG to tolerate or permit its employee, agent, or representative to carry out sexual assault, abuse, or molestation.

387.   Defendant USAG held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiff and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

388.   Defendant USAG protected Defendant Nassar in part to bolster its national and international reputation in the gymnastics community.

389.   A reasonable person would not expect Defendant USAG to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse and molestation.

390.   Defendant USAG's conduct as described above was intentional and/or reckless.

391.   As a direct and/or proximate result of Defendant USAG's conduct, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

## COUNT TWENTY-THREE: FRAUD AND MISREPRESENTATION
## DEFENDANT USAG

392.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

393.    From approximately 1996 to summer 2015, Defendant USAG represented to Plaintiff and the public that Defendant Nassar was a competent, ethical, and safe physician.

394.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant USAG represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

395.    The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiff and an unknown number of other individuals.

396.    Additionally, complaints were made to Defendant USAG, yet Defendant USAG did not contact Plaintiff, the MSU Defendants, or any other clubs, or organizations affiliated with Defendant Nassar to inform them of the allegations and potential harm to Plaintiff and others.

397.    Plaintiff relied on the assertions of Defendant USAG and Plaintiff continued to seek treatment of Defendant Nassar in the wake of known concerns and dangers.

398.    Plaintiff was subjected to sexual assault, abuse, and molestation as a result of Defendant USAG's fraudulent misrepresentations regarding Defendant Nassar.

399.    As a direct and/or proximate result of Defendant USAG's fraudulent misrepresentations, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; was prevented and will

continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

## VIII. CLAIMS AGAINST NASSAR

**COUNT TWENTY-FOUR: ASSAULT & BATTERY**
**DEFENDANT NASSAR**

400.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

401.    The acts committed by Defendant Nassar against Plaintiff described herein constitute assault and battery, actionable under the laws of Michigan.

402.    Defendant Nassar committed nonconsensual sexual acts which resulted in harmful or offensive contact with the bodies of Plaintiff.

403.    Specifically, Defendant Nassar committed acts which caused injury to Plaintiff by subjecting her to an imminent battery and/or intentional invasion of her rights to be free from offensive and harmful contact, and said conduct demonstrated that Defendant Nassar had a present ability to subject Plaintiff to an immediate, intentional, offensive and harmful touching.

404.    Defendant Nassar assaulted and battered Plaintiff by nonconsensual and unwanted digital vaginal penetration, digital anal penetration, and touching some of Plaintiff's breasts without notice or explanation of the "treatment."

405.    Plaintiff did not consent to the contact, which caused injury, damage, loss, and/or harm.

406.    As a direct and/or proximate result of Defendant Nassar's assault and battery, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem,

disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT TWENTY-FIVE:**

407.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

408.   Defendant Nassar used his authority and position with Defendants MSU and USAG to sexually assault, abuse and molest Plaintiff, and an unknown number of other individuals, minors, and young adults.

409.   Defendant Nassar, in committing acts of sexual assault, abuse, and molestation as described above under the guise of medical "treatment," exhibited conduct that is extreme, outrageous and/or reckless in nature.

410.   A reasonable person would not expect their physician to sexually assault, abuse or molest them, and to do so under the guise of medical "treatment" without proper notice or explanation, and without giving the patient the opportunity to refuse "treatment" of that nature.

411.   Defendant Nassar's conduct was intentional or reckless as he repeatedly sexually assaulted, abused, and molested Plaintiff over several years, from approximately 2009 to 2016.

412.   Defendant Nassar's conduct has caused and continues to cause Plaintiff to suffer emotional and psychological distress.

413.   As a direct and/or proximate result of Defendant Nassar's outrageous conduct Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress,

physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

**COUNT TWENTY SIX:     FRAUD AND MISREPRESENTATION**
**DEFENDANT NASSAR**

414.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

415.   From approximately 1996 to September 2016, Defendant Nassar represented to Plaintiff and the public that he was a competent, ethical, and safe physician.

416.   By representing that he was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant Nassar represented to Plaintiff the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

417.   The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiff and an unknown number of individuals at MSU, USAG meets, Defendant Nassar's home, and other locations.

418.   Specifically, Defendant Nassar's false representations include but are not limited to the following:

    a.   making the statement, explaining that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

    b.   making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

79

b.      making the statement, explaining that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

c.      making a statement, explaining to  Plaintiff and another medical professional, that the position of his hand was in an appropriate place when it was not, and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

419.   The material representation(s) to Plaintiff were false, in that Defendant Nassar was actually engaging in conduct for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

420.   Plaintiff relied on the assertions of Defendant Nassar and several Plaintiffs continued to seek treatment with Defendant Nassar even after Defendant Nassar became aware of concerns and complaints of his "treatment."

421.   When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

422.   Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted and/or relied upon by Plaintiff, in that Plaintiff:

a.      should believe that the "treatment[s]" were in fact "treatments";

b.      should believe that the "treatment[s]" were proper, appropriate, and legitimate;

c.      should not believe that she had been sexually assaulted;

    d.     should not believe that she had been sexually assaulted so that Defendant Nasser could prevent discovery of his sexual assaults;

    e.     should continue the "treatment[s]" so that Defendant Nasser could continue to sexually assault her;

    f.     should not question and/or report the conduct to appropriate authorities; and

    g.     should not reasonably believe and not be aware of a possible cause of action that she had against Defendant Nassar and/or Defendant MSU.

423.    Defendant Nassar concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

    a.     positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

    b.     dismissed a medical professional from the room, during an examination of Plaintiff of whom he was digitally penetrating, who questioned the placement of his hands;

    c.     prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during some examinations and treatments of Plaintiff so that he could sexually assault Plaintiff;

    d.     did not abide by or follow the standard of care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

    e.     did not abide by or follow restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room; and

    f.     gave patients, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

424.    The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted fraud.

425. Between the times of the 1998 complaint to Defendant Twistars, the 1999 complaint to MSU coaches and trainers, the 2000 complaint to MSU trainers, the 2004 complaint to Meridian Township Police, the 2014 Complaint to MSU officials, and September 2016 when he was fired, Defendant Nassar continued to hold himself out as a competent and safe physician.

426. Plaintiff was subjected to sexual assault, abuse, and molestation as a result of Defendant Nassar's fraudulent misrepresentations regarding Defendant Nassar.

427. At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of the MSU Defendants and operated within the scope of his employment and his negligence is imputed to the MSU Defendants.

428. At all times material hereto, Plaintiff was entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

429. As a direct and/or proximate result of Defendant Nassar's fraudulent misrepresentations, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

## IX.    DAMAGES – FOR ALL AFOREMENTIONED CAUSES OF ACTION

430. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

431.   As a direct and/or proximate result of Defendants' actions and/or inactions stated above, Plaintiff suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

432.   The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiff's constitutional and federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

433.   In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiff has and continues to suffer irreparable harm as a result of the violations.

434.   The amount in controversy for Plaintiff exceeds the jurisdictional minimum of $75,000.00.

WHEREFORE, Plaintiff requests this Court and the finder of fact to enter a Judgment in Plaintiff's favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seek against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby request that the trier of fact, be it judge or jury, award Plaintiff's all applicable damages, including but not limited to compensatory,

special, exemplary and/or punitive damages, in whatever amount Plaintiffs are entitled,

and all other relief arising out of law, equity, and fact, also including but not limited to:

    a.    Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiffs' Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

    b.    Punitive and/or exemplary damages in an amount to be determined as reasonable or just the trier of fact;

    c.    Reasonable attorney fees, interest, and costs; and

    d.    Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

Respectfully Submitted,

/s/ Louis G. Corey
LOUIS G. COREY (P34377)
THE COREY LAW FIRM
Attorney for Plaintiff
401 N. Main Street
Royal Oak, MI 48067
(248) 548-9700

/s/ Todd F. Flood
TODD F. FLOOD (P58555)
FLOOD LAW, PLLC
Co-Counsel for Plaintiff
401 N. Main Street
Royal Oak, Michigan 48067
(248) 547-1032

Dated: February 16, 2018

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION


JANE DOE 02

       Plaintiff

vs.                                                   Case No.
                                                    Hon.

MICHIGAN STATE UNIVERSITY;
THE BOARD OF TRUSTEES OF MICHIGAN
STATE UNIVERSITY;
LAWRENCE GERARD NASSAR, D.O., and
MICHIGAN STATE UNIVERSITY SPORTS
MEDICINE CLINIC and USA GYMNASTICS, INC.

       Defendants
_____

LOUIS G. COREY (P34377)
Attorney for Plaintiff
401 N. Main Street
Royal Oak, Michigan  48067
(248) 548-9700

TODD F. FLOOD (P58555)
Co-Counsel for Plaintiff
401 N. Main Street
Royal Oak, Michigan  48067
(248) 547-1032
_____

## JURY DEMAND

Plaintiff, Jane Doe 02, by her attorneys, COREY LAW FIRM and FLOOD LAW,

PLLC, hereby rely on the demand for a trial by jury previously asserted on all claims set

forth above.

Respectfully Submitted,


 /s/ Louis G. Corey                         
LOUIS G. COREY (P34377)
THE COREY LAW FIRM
Attorney for Plaintiff
401 N. Main Street
Royal Oak,  MI  48067
(248) 548-9700



 /s/ Todd F. Flood                          
TODD F. FLOOD (P58555)
FLOOD LAW, PLLC
Co-Counsel for Plaintiff
401 N. Main Street
Royal Oak, Michigan  48067
(248) 547-1032


Dated: February 16, 2018

86